IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | | |
|---|---|---|
| GOW MEDIA, LLC | § | |
| | § | |
| Plaintiff, | § | |
| | § | CAUSE NO. 4:21-cv-1436 |
| VS. | § | |
| | § | |
| URBAN PUBLISHERS, INC., | § | |
| UPI DIGITAL, LLC, and | § | |
| CHAD MILLER, individually | § | |
| | § | |
| Defendant. | § | |

**PLAINTIFF'S ORIGINAL COMPLAINT AND REQUEST FOR PRELIMINARY AND
PERMANENT INJUNCTION**

TO THE HONORABLE UNITED STATES DISTRICT JUDGE:

Gow Media, LLC ("Gow Media") files this Original Complaint against Urban Publishers, Inc. ("Urban Publishers"), UPI Digital, LLC ("UPI Digital"), and Chad Miller ("Miller") (collectively, "Defendants") and respectfully shows the following:

**I.
STATEMENT OF THE CASE**

1.      This is a theft of trade secrets case between two highly competitive media companies. Gow Media operates CultureMap, an online culture and lifestyle magazine focusing on the Houston market. Urban Publishers & UPI Digital (collectively "Urban") operates PaperCity which originally started as a traditional print-based lifestyle magazine also focused on the Houston market. PaperCity later shifted to an online format much like that of CultureMap. In this case, Urban and Miller brazenly violated federal law—including the Defend Trade Secrets Act, the Computer Fraud and Abuse Act, as well as state law.

2.      The issues in this lawsuit began in 2016, when Chad Miller—a former sales manager at CultureMap who now works for PaperCity—began illegally and covertly accessing the database where CultureMap stores its confidential trade secret information. Miller did so using login credentials he created just before leaving CultureMap.

3.      Using this valuable stolen information—including, among other things, customer lists, pricing information, employee notes, and advertising contracts —Miller and Urban began a campaign to divert advertising customers away from CultureMap and to PaperCity. The unauthorized login credentials were used thousands of times to access CultureMap's trade secrets, including nearly two dozen logins from IP addresses directly tied to PaperCity's offices. These unauthorized logins continued until early 2020, when CultureMap discovered the security leak.

4.      By that time, however, the damage had been done. CultureMap suffered greatly because of the underhanded tactics of its competitor. By illegally accessing and obtaining CultureMap's trade secrets, PaperCity stole advertising customers away from CultureMap, causing hundreds of thousands of dollars in damages.

## II.
## PARTIES

5.      Plaintiff Gow Media, LLC is a Texas limited liability company organized under the laws of and doing business in the State of Texas.

6.      Defendant Urban Publishers, Inc. is a Texas corporation organized under the laws of and doing business in the State of Texas. Defendant Urban Publishers, Inc.'s principal place of business is in Houston, Harris County, Texas. Defendant Urban Publishers, Inc. is the member of Defendant UPI Digital, LLC. Defendant Urban Publishers, Inc. can be served by and through its Registered Agent for Service of Process, James B. Kastleman, 3411 Richmond Avenue #600,

Houston, Texas 77046, or wherever it may be found. **Issuance of Citation for Service of Process on Urban Publishers, Inc. at the address and in the manner stated above is hereby requested.**

7.      Defendant UPI Digital, LLC. is a Texas limited liability company organized under the laws of and doing business in the State of Texas. Defendant UPI Digital, LLC's principal place of business is in Houston, Harris County, Texas. Defendant UPI Digital, LLC can be served by and through its Registered Agent for Service of Process, Sanford L. Dow, 2700 Post Oak Blvd., Suite 1750, Houston, Texas 77056, or wherever he may be found. **Issuance of Citation for Service of Process on UPI Digital, LLC at the address and in the manner stated above is hereby requested.**

8.      Defendant Chad Miller is an individual residing in Montgomery County, Texas. He may be served at 3810 Benders Lane, Spring, Texas 77386 or wherever else he may be found. **Issuance of Citation for Service of Process on Chad Miller at the address and in the manner stated above is hereby requested.**

### III.
### JURISDICTION AND VENUE

9.      This Court has subject matter jurisdiction over the federal statutory claims pursuant to 28 U.S.C. §§ 1331 and 1338 because this action alleges violations of federal statutes, including the Computer Fraud and Abuse Act (18 U.S.C. § 1030).

10.      This Court has supplemental jurisdiction over the claims in this Complaint that arise under the laws of the State of Texas under 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form a part of the same case or controversy and derive from a common nucleus of operative facts.

11.      Venue with respect to Gow Media's claims is proper in the Southern District of Texas as (a) Defendants reside or are located within the Southern District of Texas and (b) a

substantial part of the events, acts or omissions giving rise to Gow Media's claims against Defendants occurred within the Southern District of Texas, and (c) Gow Media suffered injury in Houston, Texas. *See* 28 U.S.C. §1391.

**IV.**
**FACTUAL BACKGROUND**

**A.     CultureMap and PaperCity**

12.     Gow Media is a lifestyle, culture, and sports media company with several prominent brands, including Culturemap.com ("CultureMap"), which currently focuses on Houston, Dallas,  Austin, Fort Worth and San Antonio based culture and lifestyle news in an online format. Since its creation, CultureMap has been a respected staple of the Houston and Texas community, and it provides a valuable advertising platform for local businesses. Gow Media purchased CultureMap's assets from its prior owner in January 2017 and immediately took over operations for the site, including expanding the brand to include related websites.

13.     Urban Publishers and UPI Digital (collectively "Urban") is a lifestyle and culture media company that runs PaperCity, which currently focuses on Houston and Dallas based culture and lifestyle news in both print and online formats. PaperCity started as a traditional print magazine, only later transitioning to the online market.

14.      CultureMap and PaperCity are the two major online culture and lifestyle brands that focus on Texas-based content. Together with providing interesting and informative content to their readers, these online publications also provide an important platform on which local businesses can advertise. In the current online economy advertisement money is critical for the success of any online publication. Advertisers have limited budgets and must carefully choose where to place advertisements. As a result, CultureMap and PaperCity often compete for the same

advertisement dollars available from potential and current customers. As a result, CultureMap and PaperCity are direct competitors.

**B.      CultureMap's Online Customer Relationship Management Tool, Nutshell**

15.      The importance of Nutshell, a third-party software that CultureMap uses as its customer relationship management ("CRM") tool, cannot be overstated. CultureMap uses Nutshell to track all sales activity, including, but not limited to, active and prospective customer information, including company names, key contacts and their contact information, internal notes about customer conversations and proposals, including sensitive information on products, pricing, and projected timelines, as well as the final details of successful deals.

16.      Nutshell acts as the company-wide repository for all sales activity and contains Gow Media's confidential information and trade secrets. All sales account representatives have separate login credentials to Nutshell, and the majority of CultureMap's sales team uses Nutshell extensively to allow management and co-workers to track their progress on their assigned customers.

17.      Accordingly, Nutshell is a goldmine of CultureMap's confidential information including historical trends and real-time data about current and prospective customers. A rival sales representative with access to CultureMap's Nutshell account would be put at an extreme—and unfair−competitive advantage. As such, CultureMap takes reasonable steps to guard the secrecy of the information contained in it including, but not limited to, restricting access to the account and implement individual passwords to protect the account.

**C.      PaperCity's history of questionable competition with CultureMap**

18.      Prior to Gow Media's purchase of CultureMap, Chad Miller ("Miller") was employed as Head of Sales at CultureMap. As sales manager, Miller had access to CultureMap's

confidential information, including access and administrative control over CultureMap's Nutshell account. In early November 2016, Miller left CultureMap to work for PaperCity.

19.     Soon after Miller's departure, PaperCity began to poach additional CultureMap employees, particularly those in the advertising and sales departments. In 2017, PaperCity hired two CultureMap salespeople. That same year PaperCity hired CultureMaps' Digital Ad Operations Manager. In 2019, PaperCity hired CultureMap's Head of Sales, another top salesperson, and a sales account representative.

20.     In October 2019, a PaperCity employee who previously worked for CultureMap accessed CultureMap's Google Analytics account. Google Analytics, like Nutshell, is the source of a great deal of confidential information, including website traffic levels, analysis of marketing efforts, tracking return on investment, and demographic information of users. When Gow Media confronted PaperCity, PaperCity responded that this access was simply a mistake.

21.     Throughout this time, PaperCity consistently copied CultureMap's online content, often barely attempting to hide its plagiarism. For example, CultureMap ran a monthly feature entitled "Where to Eat in Houston Right Now," shortly after, in an amateurish and poorly disguised act of mimicry, PaperCity began running its own feature entitled "Where to Eat Right Now in Houston." In other instances, PaperCity would publish slightly re-worded CultureMap exclusives shortly after they went live.

22.     This repeated actions by Urban, PaperCity, and the sales team led by Chad Miller over time shows a clear pattern of copying CultureMap's hard work and intellectual property for PaperCity's undeserved gain.

**C.      Chad Miller's Unauthorized Access to CultureMap's Nutshell Account**

23.      In early 2020, Gow Media became aware that CultureMap's Nutshell Account contained one set of login credentials, called "Previous Rep Account," that was not associated with any current employee nor had been used by an employee since Gow Media bought CultureMap.

24.      The unauthorized credentials were tied to a personal Gmail account named "cmapnutshell@gmail.com" which was created on September 9, 2016 by a person who had administrative rights to CultureMap's Nutshell Account at that time. Upon information and belief, this account was created by Miller, just two months before his departure from CultureMap.

25.      Upon discovering the fact that someone outside CultureMap was using the unauthorized credentials to access Nutshell, Gow Media shut down the unauthorized credentials' access to Nutshell.

26.      Prior to discovery and shutting down the account, the unauthorized credentials were used to access CultureMap's Nutshell Account approximately 4,274 times between December of 2016 and March of 2020. This amounts to around 23 unauthorized accesses every week for three and a half years.

27.      Twenty-two of these unauthorized accesses can be traced directly to an IP address associated with PaperCity's offices. The remaining logins were made on mobile devices or internet connections that do not track to a publicly available IP address, however, upon information and belief, at least some of these IP addresses are linked to personal devices of Miller.

28.      At the time the unauthorized credentials were created, Miller was employed as Head of Sales at CultureMap. In that role, Miller was the only sales team member with administrative access to Nutshell and, therefore, the only sales team member that could have created the unauthorized credentials. Miller left CultureMap for PaperCity in November of 2016

and the unauthorized use of the credentials by a person outside CultureMap began in December 2016. Upon information and belief, Miller has been employed by PaperCity continuously since that date and, as of the filing of this lawsuit, Miller is still employed by PaperCity.

**D.    Stealing of CultureMap's Confidential Information and Business**

29.    Following the end of his employment with CultureMap, Miller, as Head of Sales at PaperCity, conspired with PaperCity's top management and ownership to use the unauthorized credentials to consistently access CultureMap's confidential information for more than three years and to use that information to steal CultureMap's business.

30.    Through the unauthorized access, Urban and Miller obtained trade secrets and confidential information. The extraordinary frequency of the logins can lead to only one conclusion: Miller, Urban, and PaperCity used the stolen data to provide undeserved and illegal competitive advantage to PaperCity. Not only has PaperCity succeeded where it should not, CultureMap lost potential new business and potential repeat business because of PaperCity's ability to undercut CultureMap's proposals and unfairly compete based on the use of stolen information.

31.    Defendants have used the unauthorized credentials to access information that allows them to bid against their direct competitor, undercutting CultureMap's ability to fairly compete. CultureMap has undertaken exhaustive review of the information in Nutshell and specific competitive customer situations, and without doubt Defendants have benefited from information and materials they had no legal right to possess and that such misconduct has harmed CultureMap.

32.    As of the filing of this complaint, on information and belief, Miller and Urban have used Gow Media's confidential and trade secret information to poach many customers of Gow Media. As a result of Miller and Urban's actions, Gow Media has lost annual revenue of *at least*

$860,800. The present value of this lost business, and thus the minimum extent of harm and injury suffered by Gow Media as a result of Miller and Urban's conduct described, above, is *at least* **$17,200,000.**[1]

33.     Furthermore, Gow Media has lost the actual value of its confidential, proprietary, and trade secret information, including its goodwill, processes, customer relations, employee relations, procedures, knowledge, and other economically valuable assets and facets of its business, which Miller has divulged to Urban. The full pecuniary amount and value of such lost information is in an amount to be determined at or before trial of this cause.

## V.
## CAUSES OF ACTION

34.     With respect to all breaches, acts, and omissions of Miller described under the following counts, Gow Media pleads, on information and belief, that Urban proceeded together and in concert with Miller in their actionable courses of conduct, and therefore, that in all things, **Urban was a conspirator, aider, and abetter of Miller** in his commission of the various torts and other breaches described, below. Therefore, and whether expressly stated below, Gow Media pleads that Urban is jointly and severally liable, with Miller, for the claims, causes, injuries, and losses asserted by Gow Media, below. Further, and after accepting employment with Urban, on information and belief, Miller acted on behalf of and at the direction of Urban, as Urban's agent, as its employee and in the course and scope of his employment with Urban, and therefore Urban is vicariously and jointly and severally liable for all acts, omissions, and other conduct of Miller described, below, either as Miller's principle and/or under the doctrine of *respondeat superior*.

### Count I - Violations of the Defend Trade Secrets Act.

---

[1] Calculated using standard present value calculations, conservatively adopting the current Texas post-judgment interest rate of 5% as the applicable interest rate, and assuming that the stream of revenue would continue unabated into the future and assuming also (and again, conservatively) neither an increase or diminution of the revenue derived from the customers wrongfully taken.

35.     The preceding paragraphs are incorporated herein by reference.

36.     Gow Media possessed trade secrets and confidential information in the form of electronically stored customer lists and data. Gow Media took reasonable measures to keep this information secret, including password protecting this information in its CRM system, and limiting access to that system to certain employees. This information has independent economic value, as Gow Media's list of customers, contact information, and sales information is not generally known or readily accessible to the public through proper means. This information relates to Gow Media's products and services used in interstate commerce.

37.     Miller and Urban misappropriated Gow Media's trade secrets. Miller improperly acquired Gow Media's trade secrets and confidential information by accessing Gow Media's CRM system utilizing login credentials he knew he was not supposed to have access to. Miller then stole the confidential and trade secret information contained and used it for the benefit of himself and Urban. The actions of Miller and Urban directly and proximately harmed Gow Media.

38.     Millar and Urban's actions violate the Defend Trade Secrets Act ("DTSA") 18 U.S.C. § 1836(b). Plaintiff is therefore entitled to injunctive relief, compensatory damages for actual loss and unjust enrichment, exemplary damages, and reasonable and necessary attorney's fees under 18 U.S.C. § 1836(b)(3).

### Count II - Violations of the Computer Fraud and Abuse Act

39.     The preceding paragraphs are incorporated herein by reference.

40.     To facilitate his theft of Gow Media's electronically stored trade secrets and confidential information, Miller accessed Nutshell's computer system (or cloud-based software) to gain access to Gow Media's proprietary information, which are used in interstate commerce and

communication, without authorization and/or by exceeding his authorized access on the computer systems.

41.     Through his unauthorized access of these protected computers, Miller intentionally, knowingly, and with intent to defraud, misappropriated valuable trade secrets and confidential information, resulting in more than $5,000 in damage or loss to Gow Media during a one-year period. These actions taken by Miller constitute direct violations of the Computer Fraud and Abuse Act ("CFAA"), 18 U.S.C. § 1030, *et seq.*

42.     Urban also violated the CFAA because it gave support, encouragement, and approval for Miller's unauthorized accessing of Nutshell's computer system (or cloud-based software) and Gow Media's proprietary information.

43.     The actions of Miller and Urban violate 18 U.S.C. 1030(a)(2), 18 U.S.C. 1030(a)(4), and 18 U.S.C. 1030(a)(5) for which Gow Media is entitled to injunctive relief and recovery of damages and attorney's fees.

## Count III - Violations of the Texas Theft Liability Act

44.     The preceding paragraphs are incorporated herein by reference.

45.     Miller and Urban have appropriated, stolen, and/or secured property belonging to Gow Media, including confidential and trade secret materials. These actions were done without the effective consent of Gow Media, and to the deprivation of Gow Media's right to exclusive possession of that property.

46.     Miller and Urban knowingly participated in these actions, which violated the Texas Theft Liability Act, Texas Civil Practice and Remedies Code Section 134.001, *et seq.* These actions have proximately harmed Gow Media. As a result, Gow Media has a right to recover court costs and attorney's fees in addition to actual damages.

## Count IV - Violation of the Texas Harmful Access to Computer Act

47.     The preceding paragraphs are incorporated herein by reference.

48.     Miller and Urban knowingly and intentionally accessed Gow Media's computers, networks, and/or systems, without the effective consent of Gow Media.

49.     Miller and Urban breached Gow Media's systems and in doing so stole valuable confidential information and trade secrets. These actions violate Chapter 143 of the Texas Civil Practice and Remedies Code, for which Gow Media has a right to recover actual damages, as well as court costs and attorney's fees.

## Count V - Tortious Interference with Prospective Business Relations

50.     The preceding paragraphs are incorporated herein by reference.

51.     Gow Media had ongoing business relationships with various advertisers that were stolen and thus broken by Miller. Gow Media had a reasonable expectation, especially given its history with such customers, that its business relationships and the proceeds and profits earned therefrom would continue to grow and expand.

52.     Miller knew of Gow Media's business relationships and intentionally interfered with them.

53.     Miller's actions were independently tortious. Miller used the confidential and trade secret information he stole from Gow Media to interfere with these relationships. Miller's use of this confidential and trade secret information was unlawful and was used to intentionally interfere with the business relationships Gow Media had with its customers and advertisers.

54.     Miller's interference proximately damaged Gow Media, including in the form of lost benefits of contracts and profits of Gow Media. Miller has caused Gow Media to incur damages in an amount within the jurisdictional limits of the Court. These damages include actual

damages for lost revenue derived from its advertising customers Miller has wrongfully taken, in an amount to be proven at trial in this case, but no less than $860,000. Miller's actions were done knowingly and intentionally, entitling Gow Media to exemplary damages for which it now sues.

## Count VI - Conspiracy to Interfere with Business Relations.

55.     The preceding paragraphs are incorporated herein by reference.

56.     Miller's theft and interference with Gow Media's business relations was not done alone. Miller and Urban acted together for the unlawful purpose of stealing Gow Media's confidential information and trade secrets and using said information to interfere with Gow Media's business relations. Miller and Urban had a meeting of the minds and a shared common goal: to harm its competitor Gow Media to the advantage of Urban. Miller and Urban acted in furtherance of this purpose by actually stealing and appropriating Gow Media's confidential information and trade secrets and using that information to Gow Media's detriment.

57.     Gow Media has suffered actual damages as a proximate result of this conspiracy. Further, Gow Media has a right to recover exemplary damages.

## Count VII - Unjust Enrichment

58.     The preceding paragraphs are incorporated herein by reference.

59.     As a result of the tortious and other conduct of Defendants described herein, Defendants have come into possession and ownership of money, income, property, profits, proceeds, and revenues that by right should have gone to Gow Media. With regard to any income, profits, revenues, proceeds, assets, or property obtained or to be obtained by Gow Media as a result of Defendants conduct described, above, Defendants would be unjustly enriched by allowing either of them to retain such income, profit, proceeds, revenue, money, or property. Thus, in the interest of equity and justice, Gow Media asks the Court, upon finding that Defendants are or would be

unjustly enriched as described herein, to issue an order compelling Defendants to immediately pay, turnover, return and/or pay over to Gow Media all such income, property, profits, proceeds, money, revenue and assets, and, if or some of such items have been dissipated or cannot, for whatever reason, be returned or paid to Gow Media, then Gow Media asks for an award of damages commensurate with such lost income, revenues, profits, proceeds, money, property, and assets.

## VI.
## REQUEST FOR PRELIMINARY AND PERMANENT INJUNCTIVE RELIEF

60.     The preceding paragraphs are incorporated herein by reference.

61.     Gow Media seeks all appropriate preliminary and permanent injunctive relief.

62.     Based on the foregoing paragraphs, and upon a trial on the merits, Gow Media request that the Court issue a permanent injunction, enjoining Defendants:

(a) from directly or indirectly using or disclosing any confidential, proprietary, or trade secret information of Gow Media or any of its affiliated companies;

(b) from directly or indirectly engaging in any unauthorized use or disclosure of confidential information belonging to Gow Media or any of its affiliated companies, which includes trade secrets and other information that have been developed or used and/or will be developed or used by or for the benefit, or at the expense, of Gow Media, that cannot be obtained readily by third parties from outside sources, in whatever form, tangible or intangible, pertaining to the business of Gow Media or its affiliates, employees, investors, clients, consultants, or business associates;

(c) from directly or indirectly engaging in any unauthorized use or disclosure of proprietary information belonging to Gow Media or any of its affiliated companies, which includes all information and any idea, in whatever form, tangible or intangible, pertaining to the business of Gow Media or its affiliates, employees, investors, clients, consultants, or business associates, which was conceived, developed, improved upon, or produced by any employee of Gow Media in the course of his or her employment or which was otherwise the result of work made for hire of, for, or on behalf of Gow Media or any of its affiliated companies;

(d) from directly or indirectly accessing any computer systems, accounts, or cloud-based software or databases, of Gow Media; and

(e) compelling the Defendants to return to Gow Media: (i) all confidential or proprietary information, trade secrets, and other property belonging to Gow Media, or that one or more Defendants copied from sources maintained by Gow Media; and (ii) to the extent not covered by part (i) above, all other data, documents, files, code, electronic data, or other works containing proprietary information or trade secrets of Gow Media that one or more Defendants created or derived from any data, documents, files, electronic data, or other works belonging to Gow Media, including any such information currently existing on any of the Defendants' personal computers or devices or computers or devices owned or used by Urban.

## EXEMPLARY DAMAGES

63. Because Defendants' conduct has been willful, malicious, and/or in reckless disregard of the rights of Gow Media, as described in the preceding paragraphs, Gow Media is entitled to recover exemplary damages from Defendants.

## ATTORNEYS' FEES, INTEREST, AND COSTS

64. Defendants' conduct as described in this complaint and the resulting damage and loss to Gow Media has necessitated its retention of the attorneys whose names are subscribed to this complaint. Plaintiff is entitled to recover reasonable attorneys' fees and costs pursuant to 18 U.S.C. §1030 and pursuant to Texas Civil Practice and Remedies Code §134.005, as well as the statutes identified above.

## CONDITIONS PRECEDENT

65. All conditions precedent to the bringing of Gow Media's claims for relief have been performed or have occurred.

## JURY DEMAND

66. Gow Media demands a trial by jury as to all claims and issues so triable.

## PRAYER

WHEREFORE, PREMISES CONSIDERED, Plaintiff Gow Media, LLC ("Gow Media") respectfully prays that Defendants Urban Publishers, Inc. ("Urban Publishers"), UPI Digital, LLC

("UPI Digital"), and Chad Miller ("Miller") (collectively "Defendants") be commanded to answer,

and that Gow Media have and recover the following orders and judgments from Defendants:

A.     A preliminary injunction that provides, at a minimum, the relief requested in Section VI above;

B.     A permanent injunction that provides, at a minimum, the relief requested in Section VI above;

C.     All actual damages sustained by Gow Media;

D.     Gow Media's reasonable and necessary attorney's fees in this suit;

E.     Gow Media's costs of suit and pre-judgment and post-judgment interest in the maximum amounts allowed by law;

F.     Exemplary damages in an amount that is reasonable and necessary to punish Defendants for their willful, malicious, and wrongful conduct, and to deter future misconduct; and

G.     All such other and further relief, whether at law or in equity, to which Gow Media

may be justly entitled.

Dated 30th day of April, 2021.

                                        Respectfully submitted,

                                        MURRAH & KILLOUGH, PLLC

                                        By: _____
                                        Richard C. Killough
                                        *ATTORNEY-IN-CHARGE*
                                        S.D. of Texas Bar No. 23582
                                        Mike Belleville
                                        S.D. of Texas Bar No. 3362944
                                        Erica A. Dryden
                                        S.D. of Texas Bar No. 3542904
                                        3000 Weslayan St., Suite 305
                                        Houston, Texas 77027
                                        Tel: (281) 501-1601
                                        Fax: (713) 588-8778
                                        E-mail:rkillough@mktxlaw.com
                                        E-mail:mbelleville@mktxlaw.com
                                        E-mail:edryden@mktxlaw.com

                                        ***Attorney in Charge for***
                                        ***Plaintiff Gow Media, LLC***